**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**Durham Division**

| | |
|---|---|
| PAULA HINDMAN and DIRON KELLY, *on behalf of themselves and all similarly situated individuals*,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN LANDMARK MANAGEMENT LLC, CADENCE AT CATES CREEK POE LLC, and CONRAD AT CONCORD MILLS POE LLC,<br><br>Defendants. | COMPLAINT – Class Action<br><br>Civil Action No. 26-cv-1229 |

**<u>CLASS ACTION COMPLAINT</u>**

Plaintiffs Paula Hindman and Diron Kelly are among the thousands of North Carolina residents who have rented apartments managed and operated by Defendant American Landmark Management LLC ("Landmark Management" or "Landmark"), and owned by its subsidiaries or affiliates Defendants Conrad at Concord Mills POE LLC ("Conrad LLC") and Cadence at Cates Creek POE LLC ("Cadence LLC," together with Conrad LLC, the "Property Owners"). During their tenancies, Defendants have charged Plaintiffs thousands of dollars in unlawful, deceptive, and unfair fees. This is an action to vindicate their rights and the rights of Defendants' current and former North Carolina tenants under North Carolina landlord-tenant law, N.C. Gen. Stat. § 42-38 *et seq.*; the North

Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat.§ 75-1.1; and the North Carolina Debt Collection Act, N.C. Gen. Stat. §§ 75-54(6) and 75-55(2).

## **INTRODUCTION**

1. Over the last decade, many types of businesses, including large corporate landlords like Defendants, have increasingly charged consumers "junk fees" to boost their profits. Junk fees are commonly defined as "add-on charges that provide little to no value in exchange" for the price.[1] As the Federal Trade Commission recently explained, "Rental pricing practices that are neither clear nor transparent undermine competition and harm consumers[.]"[2]

2. This case arises because Defendants Landmark and the Property Owners impose mandatory unfair and deceptive fees on tenants at their properties in North Carolina, and charge additional fees tenants have not agreed to pay or that are prohibited by North Carolina law. As multiple reports have found, these practices unfairly compound the rent burden on consumers, depriving them of financial mobility.[3] These fees also exacerbate the eviction crisis by making it even harder for tenants to stay in their homes.

---

[1] Luke Herrine, *Unfairness, Reconstructed*, 42 Yale J. on Reg. 95, 122 (2025).
[2] Federal Trade Commission, *FTC Seeks Public Comment on a Proposed Rulemaking Regarding Unfair or Deceptive Rental Housing Fee Practices: Proposal seeks comments on ways to protect consumers from unfair or deceptive rental housing fees and foster competition, price transparency, and marketplace efficiency* (Mar. 12, 2026), https://www.ftc.gov/news-events/news/press-releases/2026/03/ftc-seeks-public-comment-proposed-rulemaking-regarding-unfair-or-deceptive-rental-housing-fee.
[3] Federal Trade Commission, *Advance Notice of Proposed Rulemaking and Request for Comment on Rule on Unfair or Deceptive Rental Housing Fee Practices*, 91 Fed. Reg. 12325, 12326 (proposed Mar. 12, 2026).

3. Landmark and the Property Owners are subsidiaries or affiliates of the Electra Real Estate Ltd. family of companies (together, "Electra"). Electra acquires multifamily residential real estate throughout the United States, with a focus on acquiring distressed residential properties in areas like Charlotte and the Research Triangle that have high rental housing costs. Electra creates nominal subsidiaries or affiliates like the Property Owners to purchase the properties using its investment funds. Landmark provides property management services to the acquired properties. At each new property, Defendants increase their profits by making minimal upgrades and then adding costly, mandatory junk fees in addition to raising the base rent.

4. This junk fee-driven business model has helped increase costs for tenants so significantly that it has fueled eviction filings at Defendants' properties. In fact, Defendants' eviction filing rates against North Carolina tenants are many multiples higher than the average filing rates in the state. In the 2025 to 2026 fiscal year, there were 12 eviction filings for every 100 renter households in North Carolina.[4] By contrast, in 2025, properties managed by Landmark in Mecklenberg County filed an average of 50 evictions

---

[4] From July 1, 2025 to June 30, 2026, there were 175,564 eviction filings in North Carolina. *See* Row 1392, Column H, *Civil Issue Filings/Order Results FY 2025-2026*, North Carolina Judicial Branch, https://www.nccourts.gov/documents/publications/civil-issue-filingsorder-results (last accessed October 16, 2026). As of 2026, there were 1,428,852 renter households in North Carolina. *North Carolina State Report*, National Low Income Housing Coalition, https://nlihc.org/oor/state/nc (last accessed October 16, 2026).

per 100 units. That same year, a single Landmark-managed property, The Conrad, filed 63 evictions for every 100 units.

5. Defendants' junk fee practices affect all stages of the landlord-tenant relationship.

6. First, Landmark and the Property Owners charge mandatory monthly fees in addition to base rent, including fees for credit reporting and internet and cable packages, making enrollment in these services a condition of renting at a Landmark property. Defendants' fees exceed the cost of providing these services, or the cost to tenants if they bought the services themselves, serving as a profit center for Defendants and reducing competition for these services. Moreover, Defendants misrepresent the costs, benefits, and basis for the fees. These mandatory monthly junk fees often increase tenants' monthly rent burden by over $100 per month.

7. Then, if tenants are unable to pay the full amount of their monthly rent and fees, Defendants aggressively extract more junk fees as a penalty for falling behind. While Defendants characterize these fees as a legitimate part of the default and eviction process, they blatantly violate North Carolina law.

8. For example, if tenants are late paying rent or fees, Defendants disconnect tenants' internet and cable service but continue to charge for the service. Defendants then charge additional fees to reconnect the service that far exceed the amounts Defendants disclose in the lease. Defendants further threaten to file eviction actions against these

tenants, charging them "attorney or legal" fees for preparing eviction filings even when Defendants *never file them* and that exceed the state's caps on those fees. If Defendants do file an eviction action and a tenant appeals, Defendants charge the tenant additional late fees that violate North Carolina law. Finally, after evicting a tenant, Defendants send the tenant a bill stating the tenant owes two additional months' rent for "early termination" of the lease. Defendants have no legitimate basis under the lease or the law to charge this fee—it is simply a penalty for having been evicted.

9. Plaintiff Diron Kelly is a former tenant of Defendants Landmark Management and Conrad LLC who fell victim to their predatory junk fee practices.

10. After Defendant Conrad LLC bought the building where Mr. Kelly had lived for over a year, Mr. Kelly could not keep pace with the significant mandatory monthly junk fees. Mr. Kelly fell behind on rent and was charged more junk fees through the eviction process. By the time Mr. Kelly was evicted, he had paid thousands of dollars in junk fees and Conrad LLC and Landmark Management alleged he still owed thousands more, including a final eviction penalty fee of almost $3,000.

11. Mr. Kelly has not been able to find stable housing since Conrad LLC and Landmark Management evicted him, and he continues to receive collection notices regarding alleged rent debts that include thousands of dollars of illegally charged junk fees.

12. Plaintiff Paula Hindman is a retired postsecondary educator and a current tenant of Defendants Landmark Management and Cadence LLC who is a victim of their predatory junk fee practices.

13. After Cadence LLC bought the building where Ms. Hindman had lived for several years, she began to receive bills that charged new mandatory monthly junk fees, including fees for a credit reporting product and a costly internet and cable package that significantly increased the cost of her housing and far exceeded her budget.

14. Having no reasonable housing alternatives, Plaintiffs paid the fees Defendants demanded and suffered financial harm as a result.

15. Through their junk fee practices, Defendants have violated the North Carolina Residential Rental Agreements Act ("NCRRAA"), N.C. Gen. Stat. § 42-38 *et seq.*; the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"), N.C. Gen. Stat. § 75-1.1; and the North Carolina Debt Collection Act ("NCDCA"), N.C. Gen. Stat. §§ 75-54(6), 75-55(2).

## **PARTIES**

16. Plaintiff Paula Hindman has resided at the Cadence at Cates Creek apartment complex ("The Cadence"), in Hillsborough, North Carolina, since 2016.

17. Plaintiff Diron Kelly resided at the Conrad at Concord Mills apartment complex ("The Conrad"), in Charlotte, North Carolina from about 2021 through May 2024. He currently resides in Georgia.

18. Defendant Landmark Management is a Delaware limited liability company headquartered in Tampa, Florida. It is one of the largest multifamily residential property management companies or landlords in the United States, according to the National Multifamily Housing Council, managing and operating over 35,000 residential housing units across the South and Southwest.[5] Landmark manages and operates nine properties in North Carolina, including The Conrad and The Cadence, consisting of over 3,000 total residential units.

19. Defendant Conrad LLC is a Delaware limited liability company with its principal office in Tampa, Florida. It owns The Conrad and is an affiliate or subsidiary of Landmark Management and is part of the same corporate family.

20. Defendant Cadence LLC is a Delaware limited liability company with its principal office in Tampa, Florida. It owns The Cadence and is an affiliate or subsidiary of Landmark Management and is part of the same corporate family.

## **JURISDICTION AND VENUE**

21. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because Plaintiffs and the putative class members (North Carolina and Georgia) and Defendants (Delaware and Florida) are citizens of different states and the amount in controversy, in the aggregate, exceeds

---

[5] *2026 Rankings: NMHC Top 50 Owners*, National Multifamily Housing Council, https://www.nmhc.org/research-insight/the-nmhc-50/top-50-lists/2026-top-owners/ (last accessed October 16, 2026).

$5,000,000. Under the CAFA, claims of individual putative class members are aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000. *Id.* § 1332(d)(6). Courts identify the amount in controversy in a diversity proceeding by calculating "the pecuniary result to either party which [a] judgment would produce." *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002) (quoting *Gov't Employees Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964)). Statutory damages are properly included in such calculations. *See Bartnikowski v. NVR, Inc.*, 307 F. App'x 730, 735 (4th Cir. 2009). Attorney's fees may also be included in the amount in controversy when recoverable under the asserted statute. *Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933).

22. Here Count II alleges violations of the NCUDTPA and seeks relief for all current and former Landmark tenants within the last four years who were charged mandatory fees for Defendants' credit reporting and internet and cable products. Plaintiffs allege that each of Defendants' tenants were charged these fees. Defendant Landmark manages and operates over 3,000 residential units among its North Carolina properties, meaning there are at least 3,000 putative class members entitled to relief under Count II.

23. Should Plaintiffs prevail on Count II, they and each putative class member are entitled to treble their actual damages, or three times the amount of the fees assessed each month that Defendants charged the disputed fees. N.C. Gen. Stat. § 75-16. Defendants have charged the disputed fees to each tenant at a North Carolina property every month for at least the past four years, in an amount believed to average about $100 per month. This

entitles Plaintiffs and the putative class members to statutory damages on Count II that exceed $5,000,000. This is before considering the damages a court could award if Plaintiffs prevail on any additional counts or are awarded attorney's fees and costs. *See id.* § 75-16.1.

24. The Court also has jurisdiction over all other claims under at least 28 U.S.C. § 1367 because they each arise from the same case or controversy as Count II.

25. This court has personal jurisdiction over Defendants because Defendants either reside in North Carolina or conduct business in this District.

26. Venue is proper in this District because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District and Defendants are subject to the court's personal jurisdiction in this District. 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

### *Defendants Work Together to Impose Junk Fees at Every Stage of Tenancy*

27. Upon information and belief, and based on industry practice, Electra and Defendant Landmark Management partner with investors and various trusts or investment funds to establish limited liability companies (the Defendant Property Owners and others) to acquire residential real estate, while Landmark Management manages the day-to-day operations of each property.

28. Through this arrangement, each Property Owner is nominally responsible for each property and is named as the landlord on the lease contract, while Landmark Management employs the individuals who actually manage the property, communicates with prospective and current tenants, invoices and collects all rent and fees from each

tenant, and otherwise performs the functions of a landlord with respect to each property. Landmark Management is thus the sole manager for properties that its property-owner subsidiaries or affiliates nominally acquire.

29. As part of industry practice, a property manager will generally enter a master services agreement with each property owner under which the manager agrees to conduct all of the day-to-day operations at the property in return for a share of the revenues from both rent and any additional fees assessed at the property. Managers are thus equally as incentivized as property owners to increase the fees and rent assessed at a given property.

30. Under these agreements, the manager is given significant autonomy to determine the types and amounts of rent and other fees to assess at the property, which typically occurs through a yearly budget approval process under which the manager (such as Landmark Management) prepares a budget with proposed rent and fee amounts and the owner (such as Conrad LLC or Cadence LLC) approves the rent and fees and the overall budget for the year. Property owners also provide similar approvals for the rental agreements themselves, including the language used in each agreement, which the property manager (in this case, Landmark Management) drafts and publishes to prospective and current tenants. In effect, any property operated by Defendant Landmark Management uses substantially the same form lease because Landmark Management is making the decisions as to what language to use and the addenda to include, and its employees are the ones executing and enforcing the agreements with each tenant.

31. Upon information and belief, Defendants Landmark Management and the Property Owners, as well as the owners of similarly situated properties under management by Defendant Landmark Management in North Carolina, have executed agreements and entered informal arrangements in line with the above industry practice. Landmark Management is the entity that effectively determines, publishes, and collects the fees and lease terms issued in the name of the Property Owners. The Property Owners give their explicit and tacit approval of those fees and file the lawsuits and eviction proceedings under which Landmark Management enforces the lease terms and attempts to collect the unlawful charges.

***Defendants Acquire North Carolina Properties and Impose Mandatory Monthly Junk Fees, Increasing Monthly Costs for Tenants***

32. Plaintiffs' experiences with Defendants were in line with these industry practices.

33. Plaintiffs Kelly and Hindman became tenants at The Conrad and The Cadence, respectively, before Defendants' involvement with those properties.

34. Defendants bought and began to manage The Conrad and The Cadence in or about the spring of 2022. At some point during that year, Defendants presented Plaintiffs with form lease renewal offers.

35. The renewal offers included significant increases in rent, but they did not include all mandatory monthly fees that Defendants would charge.

36. It was not until lease signing that Defendants for the first time disclosed all mandatory fees, through addenda to the form lease agreements.

37. Though Mr. Kelly's lease was with Conrad LLC and Ms. Hindman's lease was with Cadence LLC, their lease agreements are nearly identical, as Landmark Management uses the same form agreement with all properties it manages and operates in North Carolina.

38. Landmark Management's form lease agreement is dozens of pages long and includes up to twenty-one separate documents and addenda.

39. It is Defendants' policy to require tenants to agree to all lease terms and addenda in the lease agreement. If a current tenant does not agree to Defendants' terms, they must move out of their home.

40. At each lease renewal during which Landmark Management and its Property Owners have been their landlords, Plaintiffs have been presented with this same form lease agreement, with significant increases in rent and fees at each renewal.

41. Because of the nature of Mr. Kelly's job, which requires extensive travel, Mr. Kelly did not have time or financial resources to look for a new place to live; reluctantly, he signed lease renewals with Landmark and Conrad LLC each year he lived at The Conrad.

42. Ms. Hindman has considered leaving The Cadence at every lease renewal due to the expense of the monthly fees. She continues to lease with Landmark and Cadence

LLC because the cost of moving to a less expensive apartment is too great for her to manage.

43. Though Defendants charge tenants mandatory monthly fees separately from the amount Defendants represent as "base" rent, Defendants consider all monthly fees additional rent. For example, the lease addendum describing the internet and technology package describes the associated fees as "additional rent." Defendants further have a policy of requiring tenants to pay their entire monthly obligation, including base rent and mandatory fees, on the first of the month. Defendants pursue evictions for nonpayment of rent against tenants for any remaining balance, including where the balance includes monthly fees.

**Credit Reporting Fees**

44. Defendants charged Plaintiffs a monthly fee of at least $8.95 for a credit reporting service called RentPlus ("Credit Reporting Fee").

45. Mr. Kelly was charged the Credit Reporting Fee for 20 consecutive months, from November 2022 to June 2024, including for a final month in June 2024 after Landmark had evicted Mr. Kelly from his unit.

46. Ms. Hindman was charged the Credit Reporting Fee for 26 consecutive months, from November 2022 to February 2025.

47. RentPlus is a "credit reporting and financial tool" offered and operated by Entrata, a property management software company that provides tools and products aimed at helping landlords cut costs and generate revenue.[6]

48. Defendants pitch RentPlus as a useful tool for tenants like Plaintiffs, when in reality it is a product designed to create income for landlords like Defendants and fails to provide the stated benefits to tenants.

49. Entrata markets the RentPlus product to landlords as a revenue enhancer, including by providing a calculator to landlords that estimates the amount by which they can "increase their bottom line" by enrolling their residents in RentPlus.[7]

50. In a form lease addendum for the product ("RentPlus Addendum"), Defendants describe RentPlus as a "credit reporting and financial tool" to report tenants' timely rent payments to one or more credit reporting agencies for an associated monthly "financial services fee." Defendants direct tenants to a website for more information about the product, where Entrata represents that RentPlus reports "on-time rent payments to the credit bureaus" and "won't include skipped or missed payments."

51. Through the RentPlus Addendum and its adoption of Entrata's statements about RentPlus, Defendants give tenants the impression that RentPlus does not report skipped or missed payments, that the product can only improve and not harm tenants' credit

---

[6] *Entrata, Inc.*, https://www.entrata.com/ (last visited Oct. 16, 2026).
[7] Complaint, *Fish, et al. v. Entrata, Inc.*, 26-cv-02416 (D. Colo. Jun. 1, 2026).

scores, and that by paying for the product, tenants eliminate the risk of negative information being reported about them to credit reporting agencies.

52. This is not true—RentPlus can report both positive and negative information on rental payments to credit reporting agencies, and often does not accurately report, or report at all, timely payments tenants do make.

53. For example, the rental payment history for Mr. Kelly that RentPlus reported to Transunion contains inaccuracies, does not include payments Mr. Kelly made, and includes missed payments.

54. Similarly, the rental payment history for Ms. Hindman that RentPlus reported to Experian fails to include the vast majority of the payments that she made to Landmark and Cadence LLC during the time she paid for RentPlus.

55. Defendants' description of the Credit Reporting Fee in the RentPlus Addendum as a "financial services fee" leaves tenants like Plaintiffs with the impression that Defendants simply pass on the cost of the service to tenants. But upon information and belief, Defendants generate revenue for themselves by automatically enrolling tenants in the service. Entrata estimates that by auto-enrolling tenants in RentPlus, about 80 percent of tenants will pay the associated fee each month, and advertises that landlords can generate significant ancillary fee revenue by requiring residents to enroll and charging them fees.[8]

---

[8] *Id.*

56. By policy, Defendants require tenants, including Plaintiffs, to sign each addendum in Defendants' form lease, including the RentPlus Addendum, in order to complete their lease agreements, after which Defendants enroll tenants in RentPlus, triggering the Credit Reporting Fee. Thus, tenants cannot avoid paying the fee, even if they later cancel the RentPlus service.

57. Once tenants are enrolled in RentPlus, it is difficult to cancel the enrollment. To opt out, tenants must navigate a confusing, multi-step, unreasonable online process. Cancelling enrollment requires a tenant to "log in" to Entrata's "RentPlus resident portal," click a link to "Cancel account," type in the email address "associated with [their] account," and send an email to that address, which then finally includes a cancellation link. Because tenants themselves took no affirmative steps to enroll, they are likely not aware of any account they maintain with the service or what email address "associated with" their account they should provide to complete the cancellation process.

58. Consistent with Entrata's marketing pitch to landlords, when tenants like Plaintiffs are automatically enrolled in RentPlus and pay the Credit Reporting Fee each month, they rarely opt out despite the lack of benefits—benefits that Defendants misrepresented—generating significant ancillary income for Defendants.

59. Ms. Hindman, for example, was only able to opt out of RentPlus with assistance, after she discovered the fee on her ledger and had been charged the monthly Credit Reporting Fee for over two years.

**Technology Fees and Associated Reconnect Fees**

60. Defendants also charge tenants a mandatory fee for a cable and internet package provided by Spectrum ("Technology Fee"), at a cost of approximately $100 per month.

61. Plaintiffs were charged the Technology Fee each month during their tenancies with Defendants.

62. Defendants required Plaintiffs and all North Carolina tenants to sign a lease addendum about this package as a condition of renting with them (the "Technology Addendum"). The Technology Addendum states that tenants must agree to pay the Technology Fee throughout their tenancy. Because of Defendants' policy of requiring tenants to pay their entire monthly obligation, including base rent and mandatory fees on the first of the month, tenants may face eviction for nonpayment of rent if they fail to pay the Technology Fee.

63. The Technology Addendum represents that the Technology Fee is necessary to "facilitate immediate and continuous internet access and related services" and that the Fee may increase "[s]hould [Landmark's] monthly costs for any of these services increase during the Lease term," leaving the impression that the fee is simply Defendants' cost of providing the service to tenants, when in reality, tenants can pay far less expensive rates on the open market.

64. For example, Spectrum advertises individual (not bulk) internet and cable packages to consumers at rates far lower than the monthly Technology Fee that Defendants charge.[9] Many tenants paid lower rates for the same or similar services before moving to a Landmark property, including through subsidies for internet and cable offered to qualifying low-income families.

65. Based on the prior lower costs, the availability of more affordable individual options outside of the technology package provided by Defendants, and Defendants' ability to benefit from the cost savings of bulk internet and cable contracts at their properties, Plaintiffs allege that Defendants pay less to Spectrum than the Technology Fee they collect from each unit, pocketing the remainder of the Fee each month as profit while giving tenants the impression they are merely charging for the cost of the service.

66. Defendants charge the Technology Fee regardless of whether the tenants use the service or would be eligible for lower rates if they purchased the services directly from Spectrum or another provider. And Defendants retain the unilateral right to reduce the service at any time without reducing the Technology Fee.

67. Plaintiffs had no cable packages before Defendants acquired their properties, yet they had to give up that option and pay the bloated, mandatory Technology Fee.

---

[9] *Spectrum Packages and Plans*, Spectrum, https://www.spectrum.com/packages (advertising a $60 cable and internet package compared to Landmark's more expensive Technology Fee) (last accessed October 16, 2026).

68. Having no reasonable housing alternatives and believing Defendants' representations that the Technology Fee was for the cost of the service and that they would have to move if they did not sign Landmark's lease, Plaintiffs paid the monthly Technology Fee to Defendants during their tenancies.

69. Prospective tenants, who have paid application fees to Defendants and are at the point of lease signing before receiving the Technology Addendum, similarly end up paying the Fee.

70. If a tenant fails to pay the Technology Fee, Defendants disconnect internet and cable service from the tenant's unit, but they continue to charge the Technology Fee even though the tenant is not receiving the service.

71. Defendants also impose a $75 or more fee to "reconnect" the services that they have disconnected ("Reconnect Fee"). The Reconnect Fee exceeds the amount Defendants disclose in their standard North Carolina leases. For example, Mr. Kelly's lease authorizes a charge of only $25 to reconnect cable and internet.

72. In at least one month, Mr. Kelly was charged over $160 in Technology Fees and Reconnect Fees when his service was not connected.

***Defendants Charge Illegal and Deceptive Junk Fees Once Tenants Fall Behind on Payments, Further Increasing Tenants' Rent Burden and Debt***

73. Tenants who struggle to keep up with the rent and monthly fees at Landmark properties are subjected to a cascade of additional junk fees if they make late payments or fail to make a complete payment of rent and fees.

74. Defendants charge these unlawful fees to North Carolina tenants like Mr. Kelly who fall behind on their rent in connection with actual or threatened eviction filings. Over forty percent of tenants who experienced an eviction filing at a Landmark property are able to save their homes by paying the fees, only to fall behind again and experience yet another filing for which they are charged unlawful fees. In 2025 alone, over fifty tenants went through this cycle four or more times.

**Attorney or Legal Fees**

75. If by about the tenth of the month, a tenant does not pay all rent and fees charged by Landmark and the relevant Property Owner for that month, by company policy Landmark and the Property Owner notify the tenant that they intend to pursue a summary ejectment action against the tenant, and charge the tenant a lump sum amount categorized as "attorney or legal charges" ("Attorney or Legal Fees").

76. Under North Carolina law, prior to judgment (but not prior to filing) in a summary ejectment action, landlords may charge tenants for "actual out-of-pocket expenses" in connection with the action, including three types of specifically named expenses: (1) filing fees charged by the court; (2) costs for service of process; and (3) reasonable attorneys' fees "actually paid or owed" up to fifteen percent of what the tenant owes. *See* N.C. Gen. Stat. § 42-46(i).

77. But Defendants routinely charge tenants Attorney or Legal Fees when they have incurred *no* out of pocket expenses because they do not file the threatened summary ejectment action.

78. This happened at least twice to Mr. Kelly. In June of 2023 and August of 2023, Landmark and Conrad LLC threatened to evict Mr. Kelly and demanded from him Attorney or Legal Fees to cure his default, without ever filing an action for summary ejectment against him. Afraid of losing his home, Mr. Kelly paid the Attorney or Legal Fees both times.

79. Additionally, Landmark and the Property Owners charge tenants Attorney or Legal Fees in amounts that exceed fifteen percent of what the tenant owes.

80. For example, in one summary ejectment action against Mr. Kelly, Landmark and Conrad LLC charged him approximately $1,000 in Attorney or Legal Fees on a balance of less than $2,000.

**Appeal Penalty Fees**

81. If Landmark and the Property Owners obtain a judgment for summary ejectment against a tenant in North Carolina, the tenant has an automatic right to appeal to the North Carolina District Court and to stay the execution of the judgment if he pays a bond to the court in the amount of undisputed rent in the judgment and the contract rent as it becomes due throughout the appeal.

82. Where the tenant is paying this monthly bond to the court, the landlord may not charge late fees to the tenant. But throughout tenants' appeals, by policy, Defendants continue to send past due notices and charge tenants late fees ("Appeal Penalty Fee").

83. For example, after Landmark and Conrad LLC obtained judgment for summary ejectment against Mr. Kelly, he appealed the judgment, paying his monthly base rent to stay in his apartment. But Landmark and Conrad LLC continued to charge Mr. Kelly late fees (the Appeal Penalty Fee), and sent him notices saying that his rent and the fees were past due.

**Eviction Penalty Fees**

84. If, after successfully obtaining a judgment for summary ejectment against a tenant, the tenant moves out of one of Defendants' properties, Defendants' policy is to charge the tenant a fee of twice the tenant's monthly base rent ("Eviction Penalty Fee").

85. Defendants bill the Eviction Penalty Fee on tenants' ledgers as an "early termination" fee, attempting to use yet another one of their lease addenda as justification for the Fee.

86. Defendants' leases contain a "Lease Contract Buy-Out Agreement" addendum ("Buy-Out Addendum") that gives tenants the right to initiate the early termination of their lease if they affirmatively decide to break their lease and meet certain conditions, including giving notice to Defendants and paying a fee of twice their monthly base rent. Under the Buy-Out Addendum, this right to early termination belongs to the

*tenant*; yet Defendants charge an Eviction Penalty Fee of the same amount where *Defendants* have taken possession of the tenant's unit as a result of a judgment for summary ejectment.

87. For example, after evicting Mr. Kelly, Landmark and Conrad LLC charged him an Eviction Penalty Fee of nearly $3,000. Mr. Kelly was not familiar with this fee and contacted The Conrad to try to understand why it had been charged. Landmark's and Conrad LLC's representative at the property told him that his lease allowed them to charge the Fee.

***Defendants' Unlawful and Deceptive Debt Collection Practices***

88. Landmark and the Property Owners attempt to collect rent and fees, including the illegal Credit Reporting and Technology Fees, from tenants through monthly bills and statements.

89. Plaintiffs received monthly bills and statements from Defendants that included Credit Reporting and Technology Fees.

90. If tenants are late paying rent, it is Landmark's and the Property Owners' policy to send past due notices to tenants that include and seek Credit Reporting Fees, Technology Fees, Reconnect Fees, and Attorney or Legal Fees.

91. Landmark and the Property Owners also seek to collect these illegal junk fees through routine communications to tenants, including emails, text messages, and letters, once they are past due.

92. Mr. Kelly received past due notices from Landmark and Conrad LLC that sought to collect the Credit Reporting Fees, Technology Fees, Reconnect Fees, and Attorney or Legal Fees.

93. Landmark and the Property Owners continue to send past due notices and communications that seek Appeal Penalty Fees throughout tenants' eviction appeals, even where the tenant has agreed to an undertaking and is paying bond to the court during their appeal.

94. For example, during his appeal, Mr. Kelly received past due notices from Landmark and Conrad LLC that included Appeal Penalty Fees.

95. Following any eviction, Landmark and the Property Owners continue to communicate with tenants about their alleged rent debts in attempts to collect those amounts, including Credit Reporting Fees, Technology Fees, Reconnect Fees, Attorney or Legal Fees, Appeal Penalty Fees, and the Eviction Penalty Fee that Defendants impose post-eviction.

96. Following his eviction, Mr. Kelly received past due notices and other communications from Landmark and Conrad LLC attempting to collect all illegally charged fees.

97. Mr. Kelly continues to receive collections notices from a third-party debt collector acting on behalf of Landmark and Conrad LLC attempting to collect all illegally charged fees.

98. Defendants represent to Plaintiffs and tenants that they owe the illegally charged fees in an effort to collect them.

99. Defendants represent to Plaintiffs and tenants that their rent or rental debts will increase through the imposition of Technology Fees and Credit Reporting Fees as additional rent.

100. Landmark and Conrad LLC represent to Mr. Kelly and tenants that their rent or rental debts will increase through the imposition of Reconnect Fees, Attorney or Legal Fees, Appeal Penalty Fees, and Eviction Penalty Fees.

***Plaintiffs Were Harmed By Defendants' Unlawful, Unfair, and Deceptive Fees and Debt Collection Practices***

101. During her tenancy with Landmark Management and Cadence LLC, Ms. Hindman has paid over $4,500 in unlawful junk fees. She continues to pay the Technology Fee each month.

102. Increases in Ms. Hindman's housing costs because of Landmark's and Cadence LLC's unlawful junk fees are especially harmful given Ms. Hindman's fixed income as a retiree. In the past year, Ms. Hindman has returned to part-time work to cover her rising housing costs.

103. During his tenancy with Landmark and Conrad LLC, Mr. Kelly paid over $2,000 in unlawful junk fees. Landmark and Conrad LLC claim that he still owes them over $4,200 in unlawful fees.

104. Landmark's and Conrad LLC's junk fee practices continue to harm Mr. Kelly following his eviction. Mr. Kelly had no back-up housing after Landmark and Conrad LLC evicted him; he was without a permanent residence for several months, during which time he slept in his car. After briefly being able to stay with family in Georgia, Mr. Kelly is again without a permanent residence. He continues to get collection notices and communications from a third-party debt collector demanding a debt that is inflated by Landmark's and Conrad LLC's illegally charged junk fees.

## NORTH CAROLINA TENANT AND CONSUMER PROTECTIONS

### *The Residential Rental Agreements Act*

105. The NCRRAA, N.C. Gen. Stat. § 42-38 *et seq*. sets forth certain rights, obligations and remedies under a rental agreement for a residential unit in North Carolina, which tenants may enforce in a civil action. *Id.* § 42-44(a).

106. The NCRRAA sets out a specific framework for how landlords can, if authorized in a written lease, lawfully charge tenants certain fees, including out-of-pocket costs associated with a landlord's summary ejectment action. *See id.* § 42-46.

107. Landlords may charge only actual out-of-pocket expenses for filing fees actually charged by a court, costs of service of process, and reasonable attorneys' fees actually paid or owed in connection with the filing and litigation of a complaint for summary ejectment, not to exceed fifteen percent of the amount owed by the tenant. *See* N.C. Gen. Stat. §§ 42-46(h)–(i). Charging for out-of-pocket expenses not explicitly authorized by the NCRRAA is unlawful. *Id.* § 42-46(h)(3)–(3a).

108. A tenant has an automatic right to appeal to North Carolina District Court a judgment for the landlord for summary ejectment. N.C. Gen. Stat. § 7A-228.

109. When a tenant does this, the NCRRAA permits the tenant to stay on the property pending appeal if the tenant posts bond to stay the execution of the judgment. N.C. Gen. Stat. §§ 42-34(b), 42-34.1(a). The tenant generally must pay as the bond the undisputed amount of rent in arrears and the contract rent as it becomes due throughout the appeal. *Id.* The filing that the tenant makes that sets the amount of the bond is called an "undertaking." *Id.* § 42-34(b). Either the landlord or the tenant can move to modify the terms of the undertaking, and both parties are bound by the order. *Id. See also N.C. Indus. Capital, LLC v. Clayton*, 185 N.C. App. 356, 365 (2007). Once the undertaking is signed, landlords cannot charge or attempt to collect late fees from the tenant. *Id.*

***The Unfair and Deceptive Trade Practices Act***

110. The NCUDTPA broadly prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a).

111. Persons injured by another person, firm, or corporation's unfair or deceptive acts or practices have a private right of action against that person. *Id.* § 75-16.

112. To prevail on a claim under the NCUDTPA, a plaintiff must show that (1) the defendant committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff.

113. Residential real estate transactions are commerce under the NCUDTPA.

114. A practice is deceptive if it has the tendency or capacity to mislead.

115. A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

### *The Debt Collection Act*

116. The NCDCA protects consumers from misleading, harmful, or unscrupulous methods of debt collection and prohibits debt collectors from, among other things, "[f]alsely representing that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or charges," and "[c]ollecting or attempting to collect from the consumer all or any part of the debt collector's fee or charge for services rendered, collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge." N.C. Gen. Stat. §§ 75-54(6), 75-55(2).

117. A "debt" is "any obligation owed or due or alleged to be owed or due from a consumer." N.C. Gen. Stat. § 75-50(2).

118. A "consumer" is "any natural person who has incurred a debt or alleged debt for personal, family, household or agricultural purposes" and a "debt collector" is "any person engaging, directly or indirectly, in debt collection from a consumer . . . [.]" N.C. Gen. Stat §§ 75-50(1), (3).

## CLASS ACTION ALLEGATIONS

119. Plaintiffs bring this action on behalf of themselves and as a class action pursuant to Federal Rule of Civil Procedure 23, including, without limitation, Sections (b)(2) and (b)(3) of Rule 23.

120. Plaintiffs bring Count II on behalf of themselves and the following class and subclasses, referred to collectively as the "**Junk Fee Classes**":

a. **Landmark Junk Fee Class.** All persons who, within the four years prior to the filing of this action, in connection with a residential lease in North Carolina, were either:

i. charged a Technology Fee by Landmark;

ii. charged a Credit Reporting Fee by Landmark;

iii. charged a Reconnect Fee by Landmark; or

iv. charged an Eviction Penalty Fee by Landmark.

b. **Conrad Junk Fee Subclass.** All persons in the Landmark Junk Fee Class who signed a lease with Conrad LLC.

c. **Cadence Junk Fee Subclass.** All persons in the Landmark Junk Fee Class who were either: (i) charged a Technology Fee by Landmark, or (ii) charged a Credit Reporting Fee by Landmark, and who signed a lease with Cadence LLC.

121. Plaintiff Kelly further brings Count I on behalf of himself and the following classes and subclasses:

a. **Landmark Attorney or Legal Fee Class.** All persons who, within the four years prior to the filing of this action, in connection with a residential lease in North Carolina, were either:

i. Charged Attorney or Legal Fees by Landmark when a Property Owner never filed an associated summary ejectment action against them; or

ii. Charged Attorney or Legal Fees by Landmark in excess of fifteen (15) percent of the amount owed to a property owner, in connection with a summary ejectment action in North Carolina.

b. **Conrad Attorney or Legal Fee Subclass.** All persons in the Landmark Attorney or Legal Fee Class who signed a lease with Conrad LLC.

c. **Landmark Appeal Penalty Fee Class.** All persons who, within the four years prior to the filing of this action, in connection with a residential lease in North Carolina, were charged late fees by Landmark after agreeing to an undertaking in connection with an appeal of a summary ejectment proceeding;

d. **Conrad Appeal Penalty Fee Subclass.** All persons in the Landmark Appeal Penalty Fee Class who signed a lease with Conrad LLC.

122. Plaintiffs bring Count III on behalf of themselves and the following class and subclasses, referred to herein as the "**Debt Collection Classes**":

a. **Landmark Debt Collection Class.** All persons in North Carolina who, within the four years prior to the filing of this action, received a monthly bill, statement,

communication, ledger, or past due notice that claimed that they owed Technology Fees, Credit Reporting Fees, Attorney or Legal Fees, Appeal Penalty Fees, Reconnect Fees, or Eviction Penalty Fees.

b. **Conrad Debt Collection Subclass.** All persons in the Landmark Debt Collection Class who signed a lease with Conrad LLC.

c. **Cadence Debt Collection Subclass.** All persons in the Landmark Debt Collection Class who received monthly bill, statement, communication, ledger, or past due notice that claimed that they owed Technology Fees or Credit Reporting Fees and who signed a lease with Cadence LLC.

123. Plaintiffs reserve the right to amend, add to, modify, and/or otherwise change the proposed class and subclass definitions as discovery in this action progresses.

124. **Numerosity.** The putative members of the Classes are so numerous that joinder of all is impractical. Based on the number of units Defendants own and/or manage in North Carolina and the volume of summary ejectment proceedings Defendants file in North Carolina, there are thousands of putative members of the Classes. The names and addresses of the putative members of the Classes are identifiable through records within Defendants' possession, custody, or control.

125. **Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist and predominate over any questions affecting only

individual putative members of the Classes. Common questions include, without limitation:

a. Whether Defendants are debt collectors under the NCDCA;

b. Whether Defendants misrepresented to Plaintiffs and the putative members of the Junk Fee Classes the basis for, costs of, or benefits of the services provided by the junk fees;

c. Whether the Credit Reporting Fees, Technology Fees, Reconnect Fees, and Eviction Penalty Fees are unfair or deceptive under the NCUDTPA;

d. Whether Landmark or Conrad LLC charged Reconnect Fees in amounts not authorized by Plaintiff Kelly's and putative members of the Landmark Junk Fee Class's and Conrad Junk Fee Subclass's lease agreements;

e. Whether Landmark or Conrad LLC charged Attorney or Legal Fees to Plaintiff Kelly and the putative members of the Landmark Attorney or Legal Fee Class and Conrad Attorney or Legal Fee Subclass in violation of or in excess of amounts authorized by the NCRRAA;

f. Whether Landmark or Conrad LLC charged Appeal Penalty Fees to Plaintiff Kelly and the putative members of the Landmark Appeal Penalty Fee Class and Conrad Appeal Penalty Fee Subclass in violation of the NCRRAA;

g. Whether Landmark or Conrad LLC charged Eviction Penalty Fees to Plaintiff Kelly and the putative members of the Landmark Junk Fee Class and Conrad Junk Fee Subclass without authorization; and

h. Whether Defendants attempted to collect Technology Fees, Credit Reporting Fees, Reconnect Fees, Attorney or Legal Fees, Appeal Penalty Fees, or Eviction Penalty Fees from Plaintiffs and the putative members of the Debt Collection Classes.

126. **Typicality.** Plaintiffs' claims arise from Defendants' junk fee practices that are applicable to each Class or Subclass and thus are typical of the claims of each putative member of the Classes. Plaintiffs are entitled to relief under the same causes of action as the other putative members of the Classes.

127. **Adequacy.** Plaintiffs are adequate representatives of the Classes because their interests coincide with and are not agnostic to the interests of the putative members of the Classes they seek to represent. Plaintiffs were charged dozens of illegal fees and lost money or incurred alleged debt because of Defendants' practices. Plaintiffs have retained counsel competent and experienced in consumer protection and class action litigation; they intend to prosecute this action vigorously; Plaintiffs will fairly and adequately protect the interests of the Classes; and they have no interests that are adverse to the Classes.

128. **Superiority.** Questions of law and fact common to the putative members of the Classes predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the

controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be nearly impossible for putative members of the Classes individually to effectively redress the wrongs done to them. Even if they could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents the potential for inconsistent or contradictory judgments and increases in delays and expenses to all parties and to the court system. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof as to the legal and factual issues raised by Defendants' conduct.

## CAUSES OF ACTION

### COUNT I – VIOLATIONS OF THE NORTH CAROLINA RESIDENTIAL RENTAL AGREEMENTS ACT

**N.C. Gen. Stat. §§ 42-34, 42-46**

**(On behalf of Plaintiff Kelly and the Attorney or Legal Fee and Appeal Penalty Fee Classes and Subclasses Against Landmark and Conrad LLC)**

129. Plaintiffs incorporate and re-allege by reference Paragraphs 1 through 128.

130. Landmark and Conrad LLC are "landlords" within the meaning of the NCRRAA because they own or manage residential properties in North Carolina and have the actual or apparent authority to perform the duties imposed by the NCRRAA. N.C. Gen. Stat. § 42-40(3).

131. Mr. Kelly and the putative members of the Classes and Subclasses are entitled to enforce their rights under their rental agreements with Defendants for dwelling units within North Carolina. *Id.* §§ 42-38, 42-44(a).

***Subcount A on behalf of Plaintiff Kelly and the Landmark Attorney or Legal Fee Class and Conrad Attorney or Legal Fee Subclass***

132. The NCRRAA limits the attorney or legal fees a landlord can charge a tenant in connection with an action for summary ejectment to actual out-of-pocket expenses, including (1) filing fees charged by the court, (2) costs for service of process, and (3) reasonable attorneys' fees actually paid or owed, not to exceed fifteen percent of the amount owed by the tenant. N.C. Gen. Stat. § 42-46(i).

133. Landmark and Conrad LLC charged Plaintiff Kelly and the putative members of the Landmark Attorney or Legal Fee Class and the Conrad Attorney or Legal Fee Subclass Attorney or Legal Fees that were not out-of-pocket expenses for Landmark or Conrad LLC because no summary ejectment action was ever filed and no out-of-pocket expenses were incurred.

134. Landmark and Conrad LLC charged Plaintiff Kelly and the putative members of the Class and Subclass Attorney or Legal Fees that exceeded fifteen percent of the amounts they owed.

135. As a result, Landmark and Conrad LLC violated section 42-46(i) of the NCRRAA.

136. For these violations of the NCRRAA, Mr. Kelly seeks on behalf of himself and the putative members of the Class and Subclass a declaratory judgment that Defendants' Attorney or Legal Fee practices violate the NCRRAA; injunctive relief preventing further violations of the NCRRAA and prohibiting the collection of alleged debt based on the unlawful Attorney or Legal Fees; and recovery of the unlawful Attorney or Legal Fees Plaintiff Kelly and the putative members of the Class and Sublcass paid to Landmark or Conrad LLC. N.C. Gen. Stat. § 42-44(a).

***Subcount B on behalf of Plaintiff Kelly and the Landmark Appeal Penalty Fee Class and Conrad Appeal Penalty Fee Subclass***

137. When a landlord obtains a judgment for possession of a residential unit in a summary ejectment proceeding, the NCRRAA permits the tenant to remain in possession of the property if he agrees to an undertaking and posts a bond to stay the execution of the judgment in the amount of the contract rent. N.C. Gen. Stat. §§ 42-34(b), 42-34.1(a).

138. Either the landlord or the tenant can move to modify the terms of the undertaking, and both parties are bound by the order. *Id.* Once the undertaking is signed, landlords cannot charge or attempt to collect additional amounts that may be due under the lease. *N.C. Indus. Capital, LLC v. Clayton*, 185 N.C. App. 356, 365 (2007).

139. Landmark and Conrad LLC charged Plaintiff Kelly and the putative members of the Landmark Appeal Penalty Fee Class and Conrad Appeal Penalty Fee Subclass late fees after they agreed to and abided by an undertaking that required them to pay the monthly contract rent to the court.

140. As a result, Landmark and Conrad LLC violated section 42-34(b) of the NCRRAA.

141. For these violations of the NCRRAA, Plaintiff Kelly seeks on behalf of himself and the putative members of the Class and Subclass a declaratory judgment that Defendants' Appeal Penalty Fee practices violate the NCRRAA; injunctive relief preventing further violations of the NCRRAA and prohibiting the collection of alleged debt based on the Appeal Penalty Fees; and recovery of the Appeal Penalty Fees Plaintiff Kelly and the putative members of the Class and Subclass paid to Landmark or Conrad LLC. N.C. Gen. Stat. § 42-44(a).

## COUNT II – VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
**N.C. Gen. Stat. § 75.1-1**
**(On Behalf of Plaintiffs and the Junk Fee Classes Against All Defendants)**

142. Plaintiffs incorporate and re-allege by reference Paragraphs 1 through 141.

143. Plaintiffs are each natural persons protected by the NCUDTPA.

144. Plaintiffs and Defendants engaged in residential real estate transactions in which Plaintiffs leased residential property in North Carolina from Defendants; Defendants' practices in connection with those transactions were in or affecting commerce.

***Defendants' Unfair Practices As To Plaintiffs and the Junk Fee Classes***

145. In connection with renting residential units to Plaintiffs and the putative members of the Junk Fee Classes, Defendants have engaged in numerous unfair practices

intended to extract additional income from their tenants divorced from the benefits Defendants provide or costs they incur.

**Technology and Credit Reporting Fees**

146. Defendants' policy of imposing mandatory monthly Technology and Credit Reporting Fees on tenants as a condition of tenancy is an unfair practice.

147. The practice is immoral, unethical, oppressive, and unscrupulous because it exploits Plaintiffs' investment in their living arrangements to increase Defendants' revenues by making services which are ancillary to tenancy a condition of the lease, rather than an optional benefit that Plaintiffs and the putative members of the Classes can elect or shop for on the open market.

148. The practice is further immoral, unethical, oppressive, and unscrupulous because the fees exceed the cost to Defendants of providing these services (or the cost to tenants if they purchased the services themselves on the open market), generating additional income from tenants and revenue for Defendants. Defendants charge these excessive Technology and Credit Reporting Fees for enrolling Plaintiffs and the putative members of the Classes in their services, while failing to disclose those financial incentives to them.

149. Defendants' practice causes Plaintiffs and the putative members of the Classes substantial injury in the form of significant increases in monthly rent or alleged rental debts.

150. Plaintiffs and the putative members of the Classes could not reasonably avoid these injuries because they have no opportunity to negotiate lease contracts or renewals with Defendants without the mandatory technology or credit reporting services, or to accept some services but decline others. They cannot reasonably avoid these injuries because they must pay the Technology and Credit Reporting Fees or move out, they have already invested significant resources in renting with Defendants and moving would be cost prohibitive, and they may be evicted if they fail to pay the fees. Plaintiffs and the putative members of the Classes also cannot reasonably avoid the Credit Reporting Fee because even if they understand they can later cancel the service, they cannot avoid Defendants' policy of requiring them to enroll as a condition of their tenancy, and then they must later navigate an unreasonably difficult and time-consuming cancellation process.

151. Any countervailing benefits to consumers or competition the Credit Reporting Fee or Technology Fee may provide are not outweighed by the substantial injury caused by Defendants' policy of making the fees mandatory, particularly where doing so decreases competition by removing North Carolina tenants' ability to select other internet, cable, or credit reporting services for themselves.

**Technology Fees for Disconnected Services**

152. Defendants Landmark's and Conrad LLC's policy of disconnecting internet and cable services for Plaintiff Kelly and the putative members of the Landmark Junk Fee

Class and Conrad Junk Fee Subclass but continuing to charge them the Technology Fee while service is disconnected is an unfair practice.

153. The practice is immoral, unethical, oppressive, and unscrupulous because it excessively punishes tenants for failing to timely pay all rent and fees. Tenants and Defendants already agree that if tenants are late in paying rent and fees, they will pay late fees and fees to reconnect internet and cable service. The policy of disconnecting internet and cable service upon failure to pay but *still charging* for the services serves no purpose other than to layer on a further unjustified penalty.

154. This practice causes substantial injury in the form of increased alleged rental debt for services that the tenants did not receive.

155. Plaintiff Kelly and the putative members of the Class and Subclass could not reasonably avoid this injury because they have no control over Defendants Landmark's and Conrad LLC's policy of continuing to charge tenants for internet and cable service that has been disconnected and no way of knowing about the policy where it is not contained in their lease agreements.

156. This practice has no countervailing benefits to consumers or to competition and therefore cannot be outweighed by the substantial injury it causes.

## Reconnect Fees

157. Defendants Landmark's and Conrad LLC's policy of imposing Reconnect Fees that exceed amounts authorized by Plaintiff Kelly's and the putative members of the Landmark Junk Fee Class's and Conrad Junk Fee Subclass's leases is an unfair practice.

158. The practice is immoral, unethical, oppressive, and unscrupulous because it excessively punishes tenants for failing to timely pay all rent and fees. Tenants already agree that if they are late in paying rent and fees, they will pay late fees and Reconnect Fees of up to certain amounts authorized in the lease. The practice of charging Reconnect Fees that exceed amounts agreed to in the lease serves no purpose other than to layer on a further unjustified penalty.

159. The practice causes substantial injury to Plaintiff Kelly and the putative members of the Class and Subclass in the form of increased alleged rental debt.

160. Plaintiff Kelly and the putative members of the Class and Subclass could not reasonably avoid this injury because they have no control over Defendants Landmark's and Conrad LLC's policy of charging Reconnect Fees that exceed the amounts Plaintiff Kelly and the putative members of the Class and Subclass agreed to in their leases and because they had no way of knowing about the policy where it is not contained in their lease agreements.

161. The practice provides no countervailing benefits to consumers or to competition and therefore cannot be outweighed by the substantial injury it causes.

### Eviction Penalty Fees

162. Defendants Landmark's and Conrad LLC's policy of charging fees to Plaintiff Kelly and the putative members of the Landmark Junk Fee Class and Conrad Junk Fee Subclass for "early termination" of a lease where Defendants Landmark and Conrad LLC have obtained judgments for summary ejectment (Eviction Penalty Fees) is an unfair practice.

163. The practice is immoral, unethical, oppressive, and unscrupulous because it uses the eviction process to further extract income from tenants and punish tenants who fall behind on rent. Defendants Landmark and Conrad LLC justify charging the Eviction Penalty Fee by referencing the early termination fee explained in their Buy-Out Addendum. The Buy-Out Addendum gives *the tenant* the option to end the lease early by giving notice of early termination of the lease and paying an early termination fee as liquidated damages for choosing to break the lease early. The Buy-Out Addendum has no application to an eviction; Plaintiff Kelly and the putative members of the Class and Subclass did not elect to terminate their leases or give notice under the addendum, but instead Defendants Landmark and Conrad LLC decided to end their tenancies by pursuing summary ejectment. This practice serves no purpose other than to charge additional money to tenants who are subject to summary ejectment proceedings, untethered from the relief a court can award through that process.

164. The practice causes substantial injury to Plaintiff Kelly and the putative members of the Class and Subclass in the form of thousands of dollars in increased alleged rental debt.

165. Plaintiff Kelly and the putative members of the Class and Subclass could not reasonably avoid this injury because they have no control over Defendants Landmark's and Conrad LLC's policy of charging Eviction Penalty Fees and are given no notice of the fee prior to their eviction.

166. The practice provides no countervailing benefits to consumers or to competition and therefore cannot be outweighed by the substantial injury it causes.

***Defendants' Deceptive Practices As To Plaintiffs and the Junk Fee Classes***

167. In connection with renting residential units to Plaintiffs and the putative members of the Junk Fee Classes, Defendants have engaged in numerous deceptive practices that give tenants the misleading or false impression that the junk fees Defendants charge in connection with tenancy have certain benefits, costs, or are authorized, including by:

a. **Misrepresenting the benefits of RentPlus**. Defendants expressly or impliedly represented to Plaintiffs and the putative members of the Junk Fee Classes that the service associated with the Credit Reporting Fee would result in only positive information about tenants being reported to credit reporting agencies, when in reality, it reports both positive and negative information and reports inaccurate or misleading

information. Plaintiffs and the putative members of the Classes relied on Defendants' representations when they paid Credit Reporting Fees.

b. **Misrepresenting the amount of the Reconnect Fee.** In charging Reconnect Fees to Plaintiff Kelly and the putative members of the Landmark Junk Fee Class and Conrad Junk Fee Subclass that exceeded amounts authorized in their lease agreements, Defendants Landmark and Conrad LLC expressly or impliedly represented to Plaintiff Kelly and putative members of the Class and Subclass that that they owed Reconnect Fees that they did not in fact owe. Plaintiff Kelly and the putative members of the Class and Subclass relied on Defendants Landmark's and Conrad LLC's representations about the amount of the Reconnect Fee when they paid the fees.

c. **Misrepresenting the basis for the Eviction Penalty Fee.** Defendants Landmark and Conrad LLC expressly or impliedly represented to Plaintiff Kelly and the putative members of the Landmark Junk Fee Class and Conrad Junk Fee Subclass that the Eviction Penalty Fee was a fee that Landmark charges by policy for "early termination" of a lease, when in reality, no law or lease term authorized the fee and thus Plaintiff Kelly and the putative members of the Class and Subclass do not owe the fee under any term of the lease or otherwise. Plaintiff Kelly and the putative members of the Class and Subclass relied on Defendants Landmark's and Conrad LLC's representations about the basis for the Eviction Penalty Fee to understand and pay what debts they owe.

d. **Misrepresenting the cost of the Technology Fee and Credit Reporting Fee.** Defendants expressly or impliedly represented to Plaintiffs and the putative members of the Junk Fee Classes that the Technology and Credit Reporting Fees cover the costs of internet and cable service and RentPlus services, when in fact the fees do not simply cover the costs of the services. Defendants' Technology and Credit Reporting Fees exceed Defendants' costs for these services (or the cost to tenants if they purchased the services themselves on the open market), providing a source of additional revenue to Defendants, which Defendants do not disclose to tenants. Plaintiffs and the putative members of the Classes relied on Defendants' representations and disclosure failures when they paid the monthly fees.

168. Because of Defendants' deceptive and unfair practices, Plaintiffs and the putative members of the Classes were injured when they either paid the challenged fees to Defendants or incurred alleged debts as a result of the fees.

169. Defendants willfully engaged in the challenged deceptive and unfair practices.

170. As a result, Defendants violated section 75-1.1 of the NCUDTPA.

171. For these violations of the NCUDTPA, Plaintiffs seek on behalf of themselves and the putative members of the Classes treble their actual damages and treble the actual damages of the putative members of the Classes; a declaratory judgment that the challenged fees violate the NCUDPTA; injunctive relief preventing further violations of

the law and prohibiting the collection of alleged debt based on the challenged fees; and attorneys' fees and costs. N.C. Gen. Stat. § 75-16.

## COUNT III – VIOLATIONS OF THE NORTH CAROLINA DEBT COLLECTION ACT

**N.C. Gen. Stat. §§ 75-54, 75-55**

**(On Behalf of Plaintiffs and the Debt Collection Classes Against Defendants)**

172. Plaintiffs incorporate and re-allege by reference Paragraphs 1 through 171.

173. Plaintiffs and the putative members of the Debt Collection Classes are consumers under the NCDCA because they are natural persons who incurred debt or alleged debt in the form of rent and/or fees Defendants claim they owe. N.C. Gen. Stat. § 75-50(1).

174. The rent and associated fees Defendants charged to Plaintiffs and the putative members of the Debt Collection Classes are debts under the NCDCA because they are obligations Defendants allege are owed by Plaintiffs and the putative members of the Classes. N.C. Gen. Stat. § 75-50(2).

175. Defendants are debt collectors under the NCDCA because they directly or indirectly attempt to collect alleged rent and/or fee debts from Plaintiffs and the putative members of the Classes, including through monthly bills and statements, communications, ledgers, and past due notices. N.C. Gen. Stat. § 75-50(3).

***Subcount A on Behalf of Plaintiffs and the Debt Collection Classes (Attempts to Collect Unlawful Fees or Charges)***

176. In monthly bills and statements, communications, and ledgers sent to Plaintiffs and the putative members of the Debt Collection Classes, and in past due notices

sent to Plaintiff Kelly and the putative members of the Landmark Debt Collection Class and Conrad Debt Collection Subclass, Defendants collected or attempted to collect Technology Fees and Credit Reporting Fees that they were not legally entitled to charge under the NCUDPTA.

177. In monthly bills and statements, communications, ledgers, and past due notices sent to Plaintiff Kelly and the putative members of the Landmark Debt Collection Class and Conrad Debt Collection Subclass, Landmark and Conrad LLC collected or attempted to collect Attorney or Legal Fees and Appeal Penalty Fees that they were not legally entitled to charge under the NCRRAA.

178. In monthly bills and statements, communications, ledgers, and past due notices sent to Plaintiff Kelly and the putative members of the Landmark Debt Collection Class and Conrad Debt Collection Subclass, Landmark and Conrad LLC attempted to collect Reconnect Fees and Eviction Penalty Fees that they were not legally entitled to charge because the amount of the fees or the fees themselves were not authorized by their lease agreements or by North Carolina law.

179. These fees were in addition to or incidental to the principal rent Defendants alleged Plaintiffs and the putative members of the Debt Collection Classes owed.

180. As a result, Defendants violated section 75-55(2) of the NCDCA.

181. For these violations of the NCDCA, Plaintiffs seek on behalf of themselves and the putative members of the Debt Collection Classes treble their actual damages and

treble the actual damages of the putative members of the Classes; civil penalties of up to $4,000 for each violation; a declaratory judgment that the challenged fees violate the NCDCA; injunctive relief preventing further violations of the law and prohibiting the collection of alleged debt based on the challenged fees; and attorneys' fees and costs.

***Subcount B on Behalf of Plaintiffs and the Debt Collection Classes***
***(Misrepresentations That Existing Obligations Could Increase)***

182. In monthly bills and statements, communications, and ledgers sent to Plaintiffs and the putative members of the Debt Collection Classes, and in past due notices sent to Plaintiff Kelly and the putative members of the Landmark Debt Collection Class and Conrad Debt Collection Subclass, Defendants falsely represented that an existing obligation of Plaintiffs and the putative members of the Classes, that is, rent, would increase by the addition of attorney or legal fees, investigation fees, service fees, or any other fees or charges, including by:

a. imposing certain monthly fees, including Technology Fees and Credit Reporting Fees, as additional rent when those fees were in violation of the NCUDTPA;

b. imposing certain Attorney or Legal Fees and Appeal Penalty Fees when those fees were in violation of the NCRRAA;

c. imposing Reconnect Fees in amounts not authorized in a lease agreement; and

d. imposing Eviction Penalty Fees without authorization in a lease agreement or under North Carolina law.

183. As a result, Defendants violated section 75-54(6) of the NCDCA.

184. For these violations of the NCDCA, Plaintiffs seek on behalf of themselves and the putative members of the Debt Collection Classes treble their actual damages and treble the actual damages of the putative members of the Classes; civil penalties of up to $4,000 for each violation; a declaratory judgment that the challenged fees violate the NCDCA; injunctive relief preventing further violations of the law and prohibiting the collection of alleged debt based on the challenged fees; and attorneys' fees and costs.

## PRAYER FOR RELIEF

Plaintiffs seek on and on behalf of all those similarly situated:

A. An order certifying the proposed Classes pursuant to Federal Rule of Civil Procedure 23 and appointing Plaintiffs and their counsel to represent the Classes;

B. A declaratory judgment that Defendants' junk fee practices violate North Carolina law;

C. Injunctive relief preventing Defendants from further violating North Carolina law and preventing the collection of alleged debt based on the challenged fees;

D. Actual damages;

E. Statutory damages and penalties, including treble damages;

F. Punitive or exemplary damages;

G. Pre- and post-judgment interest to the extent provided by law;

H. Attorneys' fees and costs; and

I. Such other legal or equitable relief as the Court may deem appropriate.

**<u>JURY DEMAND</u>**

Plaintiff demands a jury trial on all issues.

Dated: October 20, 2026

Respectfully submitted,

Plaintiff Paula Hindman
Plaintiff Diron Kelly

By: /s/ Peter Gilbert
Peter Gilbert, NCB #40415
**NORTH CAROLINA JUSTICE CENTER**
P.O. Box 28068
Raleigh, NC 27611
Tel: (919) 856-2154
Fax: (919) 856-2175
Email: peter@ncjustice.org

By: /s/ Nicole A. Mauri
Nicole A. Mauri, DCB #90042427
Tara Mikkilineni, DCB #997284
Cara Petersen, DCB #476990
**HALPERIN PETERSEN & MIKKILINENI LLP**
1025 Connecticut Ave. NW, Ste. 717
Washington, DC 20036
Tel: (202) 987-3621
Email: nicole@hpmjustice.com
Email: tara@hpmjustice.com
Email: cara@hpmjustice.com

By: /s/ Kristi C. Kelly
Kristi C. Kelly, VSB #72791
Matthew G. Rosendahl, VSB #93738
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Tel: (703) 424-7572
Fax: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: matt@kellyguzzo.com

*Counsel for Plaintiffs*